IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

VERIZON BUSINESS NETWORK                                                    PLAINTIFF
SERVICES, INC.

V.                                                    CIVIL ACTION NO. 3:06-cv-00650-JCS

DIANA DAY-CARTEE                                                            DEFENDANT

MEMORANDUM OPINION AND ORDER

Plaintiff brought this diversity action before the Court under theories of unjust enrichment and breach of contract arising out of a stock-option compensation transaction. Presently before the Court are Plaintiff's and Defendant's motions for summary judgment. Having fully considered the motions, the Court concludes that Plaintiff's motion should be GRANTED and that Defendant's motion should be DENIED.

I. Facts

From 1984 to 2002, Defendant, Diana Day-Cartee, was employed by LDDS Communications, Inc. and WorldCom, Inc., Plaintiff Verizon Business's predecessors in interest.[1] While employed at WorldCom, Defendant was compensated with options for over one million shares of WorldCom common stock worth over $40 million. On August 1, 2000, Day-Cartee sold her vested stock options to a partnership, DDC Investments, which consisted of Ms. Day-Cartee, as 80% partner, and her husband, Alan Cartee, as 20% partner. In exchange for the transfer of the

---

[1] The names LDDS, WorldCom, and Verizon/Verizon Business are used interchangeably to refer to the Plaintiff, approximating the chronologically correct title.

options, DDC Investments agreed to pay Defendant forty-six million dollars ($46,000,000) plus interest on August 1, 2015 - fifteen years after the transfer. This transaction was memorialized by the Option Sale Agreement.

On August 15, 2000,[2] Day-Cartee wrote a letter to WorldCom. The letter states in relevant part:

> DDC Investments, . . . (the "Partnership"), has completed the purchase of a portion of my vested stock options through an agreement between the Partnership and me personally called [the Option Sale Agreement]. In conjunction with this transaction, the issue of the party responsible for withholding taxes arose. As managing partner of the Partnership, I agree that should an appropriate taxing authority determine that withholding taxes are required to be or required to have been withheld . . ., I will cause the Partnership to accelerate principal payments of the "Consideration Price" as defined in the Option Sale Agreement, so as to assure that pursuant to Section 5 of the Option Sale Agreement, such withholding tax obligations, including interest and penalties, if any, shall be satisfied by the Partnership.

Section 5 of the Option Sale Agreement states:

> [DDC Investments] agrees for the benefit of Worldcom, Inc. or any successor that . . . in the event that [DDC Investments] fails to comply with its obligations [to withhold and pay to Worldcom withholding taxes on principal payments of the Consideration Price, DDC Investments] shall indemnify Worldcom, Inc. or any successor against any liability incurred by Worldcom, Inc. or any successor as a result of such failure by [DDC Investments].

The Option Sale Agreement was signed by Day-Cartee as Transferor and DDC Investments (Day-Cartee and Alan Cartee) as Transferee. This is included to give definition to the phrase in the letter agreement, "pursuant to Section 5 of the Option Sale Agreement . . . ."

In July of 2003, the Internal Revenue Service released Notice 2003-47, which addressed the type of transaction at issue in this case: in the IRS' words, "certain transactions involving the

---

[2] This August 15 letter was identical to a letter dated August 1, except that the language of the last sentence, "including interest and penalties, if any," was added to the August 15 version.

2

transfer of nonstatutory stock options to a related person in exchange for a long-term, unsecured deferred payment obligation." I.R.S. Notice 2003-47, 2003-2 C.B. 132, 2003 WL 21499240 (July 1, 2003). In Notice 2003-47, the IRS declared the type of transaction initiated by Ms. Day-Cartee as an abusive tax scheme. The IRS further addressed this type of transaction in a Technical Memorandum entitled "Transfer or Sale of Compensatory Options or Restricted Stock to Related Persons." 2004 WL 2397203. There, the IRS concluded that transactions similar to those described in Notice 2003-47 are not arm's length transactions, and that "receipt of a deferred payment obligation, such as a note, contractual agreement or annuity, at the time of the transfer results in the immediate recognition of income . . . ." *Id.*

In 2005, the IRS announced a settlement initiative to executives and their companies to resolve the tax issues arising out of these listed transactions. I.R.S. News Release FS-2005-11 (Feb. 2005). Verizon, based on its own conclusion that it had no defenses to the tax liability, decided to participate in the settlement in May of 2005. Under the settlement, Verizon would be liable for its share of FICA tax resulting from Day-Cartee's tax shelter. Because Day-Cartee refused to participate in the settlement, Verizon was also required to pay to the IRS Day-Cartee's share of the FICA tax as well as income tax withholding on the amount of income that should have been recognized when Day-Cartee received the deferred payment obligation. In March and April of 2006, Verizon Business contacted Defendant or her counsel and requested reimbursement of the taxes that Verizon was required under the Settlement Initiative to pay to the IRS on Day-Cartee's behalf. Defendant refused. Therefore, Verizon paid to the IRS $2,709,561, of which $2,563,858 was paid in satisfaction of Day-Cartee's tax obligations.

3

On March 27, 2008, the IRS sent to Defendant a Notice of Deficiency for tax years 2000 and 2001. In this Notice of Deficiency, the IRS stated: "We have determined that you owe additional tax or other amounts, or both, for the tax year(s) identified above. This letter is your NOTICE OF DEFICIENCY, as required by law."

Also, on June 25, 2008, Defendant petitioned the Tax Court for a "redetermination" of the Notice of Deficiency. Significantly, in this Petition, Defendant relies on the following fact: "Neither of the Petitioners [Day-Cartee and Alan Cartee] has any tax-related education. They are not tax attorneys, accountants, return preparers, certified financial planners, or any other type of professional that requires specialized tax skills or training."

II. Analysis

Plaintiff, in its motion for summary judgment, requests relief under the three counts of the complaint: (1) unjust enrichment; (2) breach of contract; and (3) declaratory judgment. Defendant, in her motion for summary judgment, argues that (1) the Court is barred from granting a declaratory judgment under the federal tax exception to the Declaratory Judgment Act; (2) the unjust enrichment claim fails as matter of law; (3) the breach of contract claim fails as a matter of the construction of the contract; and (4) the Court should dismiss or stay this action pending the outcome of Defendant's Tax Court petition.

A. Jurisdiction of the Court

Defendant argues that the Court does not have jurisdiction to issue a declaratory judgment under the federal tax exception to the Declaratory Judgment Act. *See* 28 U.S.C. § 2201(a). The exception does not apply in this case because, as explained more fully below, this Court is not

being asked to determine, assess, or collect Federal taxes, and does not do so by this Order. *See Henshel v. Guilden*, 300 F. Supp. 470, 472 (S.D.N.Y. 1969) (stating that "[t]he mere circumstance that a Federal tax assessment is a material element here does not bring this action between private parties within the statute's exception"). The Court therefore has jurisdiction to adjudicate this claim.

B. Defendant's Request to Dismiss or Stay

Defendant argues that this Court should dismiss or stay this action because of issue preclusion and double recovery problems that arise with the concurrent Tax Court petition. This argument fails because (1) while the Tax Court may be deciding the tax issues, this Court is deciding the breach of contract and unjust enrichment claims, and (2) there is no risk of double recovery because Defendant requested a credit in her Tax Court Petition, therein claiming that the IRS erred in the Notice of Deficiency "[b]y not crediting Petitioners with amounts paid to Respondents on their behalf by third parties." Therefore, there are no issue preclusion or double recovery inhibitions to the Court's adjudication of the motions.

C. Breach of Contract Claim

Plaintiff requests summary judgment on the breach of contract claim because Defendant has breached her obligations under the contract. The Court's primary purpose in interpreting the agreement is to ascertain the intent of the parties, and where no ambiguity exists, to apply the plain language of the "four corners" of the agreement. *See Point South Land Trust v. Gutierrez*, 997 So. 2d 967, 980 (Miss. Ct. App. 2008); *IP Timberlands Operating Co. v. Denmiss Corp.*, 726 So. 2d 96, 108 (Miss. 1998). The terms in the agreement here are not ambiguous; thus, the Court reads the terms in their ordinary meaning.

In the August 1/August 15, 2000 letter agreement, Defendant agreed to satisfy her indemnity obligations under the Option Sale Agreement should an appropriate taxing authority determine that taxes were required to have been withheld. The agreement necessarily means that if WorldCom was required by the IRS (surely an appropriate taxing authority) to pay taxes on behalf of Day-Cartee, thereby incurring a liability, then Day-Cartee would indemnify WorldCom or its successor for that liability.

Defendant argues that the terms "determine" and "required" should be given their technical meaning because they are used in a transaction within their technical field. This argument fails because this was a stock options transaction, not a tax transaction. Furthermore, Defendant admitted in her Tax Court petition that she has no tax education, training, or skills.[3] Therefore, the argument that she intended a technical meaning in her August 15, 2000 letter is rejected. The Court will not read the term "determination" to mean a final adjudication exhaustive of all appeals. The intent of the IRS contained in Notice 2003-47 and the Settlement Initiative, as well as the binding nature of the Closing Agreement, suffice for a "determination" as used in the letter agreement. Also, the IRS did indeed "determine" that Defendant owed additional tax with respect to the stock option transfer by sending her the Notice of Deficiency, and a "determination" by the IRS is required before a Notice of Deficiency can be sent, 26 U.S.C. § 6212(a).[4]

---

[3] Defendant cites Internal Revenue Code definitions and Tax Dictionary definitions in claiming her favored construction. The Court cannot reconcile this with the non-technical character of the August 2000 letter agreement. The letter agreement does not contain any reference whatsoever to the tax code or a tax dictionary. Ms. Day-Cartee's signature, and not her tax attorney's, is on that agreement.

[4] Verizon correctly points out that the Notice of Deficiency is not necessary to satisfy the condition because the letter agreement requires Day-Cartee to indemnify Verizon if the IRS required *Verizon* to pay taxes and if *Verizon* incurred a liability, not if the IRS required *Day-Cartee* to pay taxes and *Day-Cartee* herself incurred a liability. Day-Cartee did not agree to indemnify herself; she agreed to indemnify Verizon. The Notice of Deficiency is included to solidify that the IRS has made a "determination" as intended in the agreement.

Neither will the Court read the term "required" to mean absolute compulsion. The fact that Verizon entered into a settlement with the IRS does not mean that the IRS did not require Verizon to pay the taxes that it paid on Day-Cartee's behalf. Further, the Court does not read the term "required" in the letter agreement to require Verizon to contest on Defendant's behalf IRS Notice 2003-47, the Settlement Initiative, and the IRS' intent to prosecute these transactions. Verizon concluded that it had no defense to *its own* tax liability, and therefore entered into the Closing Agreement, which, as a result of Defendant's refusal to participate, required Verizon to pay taxes on Defendant's behalf.

The IRS determined that WorldCom/Verizon Business was required to pay Day-Cartee's FICA and income taxes relating to the stock option transfer. This triggered Defendant's obligation to indemnify WorldCom. WorldCom's (Verizon's) requests for this payment have been refused; thus, Defendant is in breach of the contract, and Verizon has been damaged as a result. Therefore, the Court grants summary judgment to Plaintiff on this count of the Complaint.

D. Unjust Enrichment Claim

Even if the agreement had not been breached, Plaintiff's claim of unjust enrichment provides the relief it seeks.

> "An unjust enrichment action is based on a promise, which is implied in law, that one will pay a person what he is entitled to according to 'equity and good conscience.' Thus, the action is based on the equitable principle 'that a person shall not be allowed to enrich himself unjustly at the expense of another.'"

*1704 21st Avenue, Ltd. v. City of Gulfport*, 988 So. 2d 412, 416 (Miss. Ct. App. 2008) (quoting *Koval v. Koval*, 576 So. 2d 134, 137 (Miss. 1991)).

Here, Defendant has retained a large sum of money that in equity and good conscience she

should not retain. The IRS required Verizon to pay the taxes that Day-Cartee would have been required to pay had she not been involved in what the IRS termed an abusive tax shelter. Given the aggressiveness of the IRS' prosecution of the tax schemes like the one at issue in this case, it is proper to grant Verizon relief based on the equitable remedy of unjust enrichment.

E.  Declaratory Judgment Request

By concluding for the Plaintiff on the breach of contract and unjust enrichment claims, the requests contained in Count III of the Complaint are satisfied, and therefore the declaratory judgment request is moot.

III.  Conclusion

Based on the foregoing, it is ordered that Plaintiff's motion for summary judgment is GRANTED and that Defendant's motion for summary judgment is DENIED.  A separate judgment will be entered pursuant to Rule 58(a) of the Federal Rules of Civil Procedure.

**SO ORDERED** this the 31st day of March, 2009.

/s/ James C. Sumner
UNITED STATES MAGISTRATE JUDGE